**OAIC COMMERCIAL ASSETS, L.L.C., Appellant/Cross–Appellee,**

v.

**STONEGATE VILLAGE, L.P., Cross–Appellant; CAWC Financial, Inc., Appellee/Cross–Appellant; and Larry B. White, Appellee.**

No. 05–05–01471–CV.

Court of Appeals of Texas, Dallas.

Aug. 16, 2007.

Opinion Denying Rehearing Oct. 17, 2007.

Kurt Howard Kuhn, Virginia K. Hoelscher, Brown McCarroll, L.L.P., Austin, TX, Peter J. Harry, Brown McCarroll, LLP, Dallas, TX, for Appellant.

James C. Mosser, Byron Kevin Henry, Mosser Mallers, PLLC, Dallas, TX, for Appellees.

Before Justices WRIGHT, RICHTER, and LANG.

## OPINION

Opinion by Justice LANG.

This case involves a dispute respecting the ownership and operation of a limited partnership, Stonegate Village, L.P. ("Stonegate"). At the trial court, OAIC Commercial Assets, L.L.C. ("OAIC"), recovered judgment in the amount of $1,703,615 in damages and $400,000 in attorney's fees against Stonegate and CAWC Financial, Inc. ("CAWC"), for various claims based upon a limited partnership agreement (the "agreement") respecting Stonegate. OAIC appealed, complaining of the denial of two of its claims by the trial court against CAWC and Larry B. White ("White"), the principal of CAWC. Before us, appellees Stonegate and CAWC raise several cross-points.[1]

---

1. Before this Court, Stonegate is solely a cross-appellant, while CAWC is an appellee with respect to OAIC's appeal and a cross-appellant. White, who does not cross-appeal, is solely an appellee. However, for purposes of this opinion, we refer to Stonegate, CAWC, and White as "appellees."

We focus upon OAIC's claimed status as an "unadmitted assignee" of an original limited partner's interest as defined by the agreement. That status of "unadmitted assignee" is pivotal regarding OAIC's standing to bring suit against appellees. For the reasons set forth below, we vacate the trial court's judgment and dismiss this case because, on this record, OAIC is not an "unadmitted assignee" under the agreement and, therefore, lacks standing to bring its actions against appellees.

## I. SUMMARY OF THE CLAIMS AND STANDING ISSUE

At the heart of its claims, OAIC contends it was denied the return on its capital investment to which it was entitled because it was a purchaser of a limited partner's interest or, alternatively, a limited partner's assignee under the agreement. According to OAIC, it was injured by the wrongful acts of CAWC, the general partner of Stonegate, and White, and was damaged in the amount of at least $10,430,502.94.

After a trial on the merits to the court, the trial court ruled in favor of OAIC on its claims for breach of contract and attorney's fees. In addition, pursuant to OAIC's claims for declaratory relief, the trial court: (1) declared OAIC a limited partner in Stonegate; (2) appointed OAIC liquidator of Stonegate; and (3) affirmed its partial summary judgment that OAIC, "with the status of at least an unadmitted assignee" in Stonegate, is entitled to all distributions related to the interest of OAIC's assignor. OAIC's claims for

breach of fiduciary duty and conspiracy to breach fiduciary duty against CAWC and White were denied. Both sides appeal the trial court's judgment.

On appeal, OAIC contends the trial court erred in denying its claims for breach of fiduciary duty and conspiracy to breach fiduciary duty because CAWC and White owed a fiduciary duty to OAIC as a limited partner, an unadmitted assignee, and/or the purchaser of an interest in Stonegate. OAIC asserts that duty was breached when CAWC and White, working in concert, "drained partnership assets" without paying OAIC the return to which it was entitled under the agreement.

Pivotal to our disposition of this case is appellees' position that OAIC lacks standing. Stonegate, CAWC, and White assert, inter alia, that OAIC lacked standing to bring its claims because, pursuant to the terms of the agreement, OAIC was not a limited partner in Stonegate, an unadmitted assignee, or "an assignee of any kind." [2]

We conclude there is no evidence in the record to support OAIC's claim and the trial court's judgment that, pursuant to the agreement, OAIC is "at least an unadmitted assignee" in Stonegate or "a limited partner, an unadmitted assignee, and/or the purchaser of [an interest in Stonegate]." Therefore, OAIC lacks standing to bring any of its claims against appellees. Based upon those conclusions, we vacate the trial court's judgment and dismiss OAIC's claims for lack of subject-matter jurisdiction.

---

**2.** We specifically address only the first of OAIC's four issues, in which OAIC asserts White and CAWC owed a fiduciary duty to OAIC as "a limited partner, an unadmitted assignee, and/or the purchaser of AFC's interest." In addition, we address only the first and fifth cross-points of Stonegate and CAWC, in which they: (1) contend the trial

court lacked jurisdiction to enter judgment against Stonegate and CAWC and in favor of OAIC for breach of contract because OAIC lacked standing to bring suit for breach of the agreement; and (2) challenge the trial court's award of attorney's fees to OAIC. Because of our disposition on those issues, we need not address the other issues presented.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Events Giving Rise to This Action

Stonegate, a Georgia limited partnership, was formed in April 1998 for the purpose of constructing and operating an apartment complex, Stonegate Village Apartments, in Chandler, Arizona. CAWC, a Texas corporation, served as general partner. At the time of the partnership's formation, the limited partners were Frey Ventures, L.L.C. ("Frey"), an Arizona limited liability company; CAWC/Stonegate Partners, L.P. ("CAWC/Stonegate"), a Texas limited partnership; and AFC Equities, L.P. ("AFC"), a Georgia limited partnership. Stonegate was owned 1% by CAWC, 1% by AFC, 16% by Frey, and 83% by CAWC/Stonegate.

Pursuant to the terms of the agreement, Stonegate borrowed $14 million from First American Bank of Texas to finance construction of the apartment complex. Stonegate granted a first lien against the apartment complex to secure the loan. In 1999 and 2000, Stonegate borrowed $1,158,349.31 pursuant to twenty-eight additional loans (the "second lien loans") which were secured by liens junior to the first lien granted to First American Bank of Texas.

AFC purported to transfer its interest in Stonegate to OAIC, a Florida limited liability company, effective January 18, 2000.[3] According to an April 12, 2001

---

**3.** The agreement provided in relevant part with respect to transfers of interest:

ARTICLE IX. *TRANSFERS AND ADMISSIONS*

9.1 *Restrictions on Transfers.* Except as expressly permitted or required by this Agreement, no Partner shall Transfer all or any portion of its Interest or any rights therein ... without Unanimous Consent. Any Transfer or attempted Transfer in violation of the preceding sentence shall be null and void and of no effect whatever. The Partners hereby acknowledge the reasonableness of the restrictions on Transfer imposed by this Agreement in view of the Partnership's purposes and the relationship of the Partners. Accordingly, the restrictions on Transfer contained herein shall be specifically enforceable. . . .

.2 *Permitted Transfers.*

(a) *AFC.* AFC shall have an absolute right to Transfer all or any portion of its Interest (any such Transfer being referred to as a *"Permitted Transfer"*).

. . . .

9.3 *Conditions to and Restrictions on Permitted Transfers.* A Transfer is not treated as a Permitted Transfer under *Section 9.2(c)* or *Section 10.4(a)* unless and until the following conditions are satisfied:

. . . .

(d) *Restrictions.* Either (i) the Interests shall be registered under the Securities Act of 1933, as amended, and any applicable state securities laws, or (ii) the transferor shall provide an opinion of counsel satisfactory to the Partnership, to the effect that the Transfer is exempt from applicable registration requirements and will not violate any applicable laws regulating the Transfer of securities.

This *Section 9.3* does not apply to a Permitted Transfer under *Section 9.2(a)* or *(b)*, except that *Section 9.3(d)* shall apply to any Permitted Transfer under *Section 9.2(a)*.

. . . .

9.4. *Prohibited Transfers.* Any purported Transfer of Interests that is not a Permitted Transfer is null and void and of no effect whatever; provided that, if the Partnership is required to recognize a Transfer that is not a Permitted Transfer (or if the Partnership, by Unanimous Consent and in its sole discretion elects to recognize a Transfer that is not a Permitted Transfer), then the Interest Transferred shall be strictly limited to the transferor's rights to allocations and distributions provided by this Agreement with respect to the Transferred Interests. . . .

9.5. *Rights of Unadmitted Assignees.* A Person who acquires one or more Interests but who is not admitted as a Limited Partner pursuant to *Section 9.6* is entitled only to allocations and distributions with respect to the Interests in accordance· with this

"Officer's Certificate and Release Agreement" executed by AFC's parent corporation, a "certificate of termination of AFC" was filed with the Georgia Secretary of State in November 2000. On March 22, 2001, Stonegate received a letter signed by attorney Steven Chantelois, deputy general counsel of AFC's parent corporation. According to OAIC, the letter met the agreement's requirement contained in section 9.3(d) that "the transferor shall provide an opinion of counsel satisfactory to the Partnership, to the effect that the Transfer is exempt from applicable registration requirements and will not violate any applicable laws regulating the Transfer of securities." The letter stated in relevant part:

> You have asked us to provide you with our legal opinion as to whether the offering and sale of AFC Equities, L.P.'s limited partnership interests in Stonegate Village, L.P. (The "Interest"), as described in that Sale and Assignment Agreement (the "Sale Agreement") dated January 18, 2000, is exempt from applicable registration requirements and not in violation of the applicable laws regulating the Transfer of securities.
>
> . . . .

Based on and subject to the foregoing assumptions, we are of the opinion that the offering and sale of the Interests from AFC Equities, L.P. to OAIC—Commercial Assets, Inc. is exempt from registration under the Securities Act of 1933 and not otherwise in violation of the applicable laws regulating the Transfer of securities.

. . . .

This opinion is delivered to you for the sole purpose of admitting OAIC—Commercial Assets, Inc. as a Limited Partner in Stonegate Village, L.P. and may not be delivered to or relied upon by any other party without prior written consent.

In April 2001, Stonegate transferred ownership of the apartment complex to Stonegate Chandler Village Holdings, L.L.C. ("Stonegate Chandler"), a holding company solely owned by Stonegate, in return for a membership interest in Stonegate Chandler. On April 24, 2001, Stonegate Chandler obtained financing from General Electric Credit Corporation ("GECC") to pay the first lien loan, the second lien loans, and closing costs associated with the transaction. Stonegate Chandler filed for bankruptcy in Texas on

---

Agreement, but, unless otherwise required by the [Georgia Revised Uniform Limited Partnership Act], (i) has no right to any information or accounting of the affairs of the Partnership, (ii) is not entitled to inspect the books or records of the Partnership, and (iii) has none of the rights of a partner under the [Georgia Revised Uniform Limited Partnership Act] or this Agreement.

9.6. *Admission of Assignees as Partners.* Subject to the other provisions of this *Article IX*, a transferee of Interests may be admitted to the Partnership as a Limited Partner only on satisfaction of the conditions set forth below in this *Section 9.6:*

(a) The admission is approved by Unanimous Consent, which consent may be withheld or granted in each Partner's sole discretion, or the Interests with respect to which the transferee is being admitted were acquired by means of a Permitted Transfer;

(b) The transferee agrees in writing to be bound as a Limited Partner by the terms and conditions of this Agreement;

(c) The transferee pays or reimburses the Partnership for all reasonable legal, filing, and publication costs that the Partnership incurs in connection with the admission of the transferee as a Limited Partner with respect to the Transferred Interests; and

(d) If the transferee is not an individual, the transferee provides the Partnership with evidence satisfactory to counsel for the Partnership of the power and authority of the transferee to become a Partner and to be bound by the terms and conditions of this Agreement.

September 29, 2003. In May 2004, the bankruptcy court ordered a sale of the apartment complex. The $18,999,000.00 proceeds from the sale are currently under control of the bankruptcy court.

## B. The Parties' Claims

On April 20, 2001, OAIC filed this action. OAIC contended in relevant part that, in consideration for a cash investment contributed by AFC to Stonegate, AFC, and hence, OAIC, as AFC's assignee, was entitled, pursuant to the agreement, to be paid "a preferred return prior to any distributions being made to the other partners (the 'Preferred Return')." Further, according to OAIC, "On or about January 18, 2000, AFC sold and assigned all of its Interest (the 'AFC Interest') in Stonegate Village to OAIC ... for an assigned price of $4,105,215." OAIC contends in its fifth amended original petition, "Pursuant to Section 9.2(a) of the Partnership Agreement, AFC had the **absolute right** to transfer all or any portion of its ownership Interest, including all or part of its right to the Preferred Return." (emphasis original).

According to OAIC, the unauthorized acts of the defendants "deferred indefinitely, and effectively eliminated, the Preferred Return to be paid on the AFC Interest and eliminated the approval protection rights granted to the AFC Interest" in the agreement. Specifically, OAIC contended defendants used excess cash from the GECC loan to pay off unauthorized loans secured by second liens wrongfully placed against the apartment complex. Further, OAIC asserted defendants breached the agreement by failing to fund construction overruns and cash flow defi-

cits in accordance with the agreement and by conveying the apartment complex, without the consent of OAIC, to Stonegate Chandler.

In their answers, Stonegate, CAWC, and White ("defendants") generally denied OAIC's allegations, asserted counterclaims for breach of the agreement and attorney's fees, and contended OAIC is not entitled to recover in this lawsuit because it lacked standing to sue.

In their second plea to the jurisdiction,[4] defendants contended, "It is undisputed that prior to the attempted transfer of its interest to [OAIC], AFC did not provide any securities opinion to the partnership pursuant to ¶ 9.3(d) of the partnership agreement." Therefore, defendants argued, there was "no valid assignment" to OAIC of AFC's rights or interest in the partnership and "OAIC does not have STANDING to assert its claims because, OAIC is not a substitute limited partner and is not a transferee." (emphasis original). Defendant's second plea to the jurisdiction was denied on November 9, 2004.

OAIC denied that consent of CAWC and CAWC Stonegate was required with respect to the assignment of AFC's interest to OAIC. However, OAIC asserted that if such consent was required, CAWC and CAWC Stonegate, through their unauthorized actions, were "defaulting partners," as defined by the agreement, on the date of the purported transfer. Therefore, pursuant to the agreement, they were not entitled to vote on any matter related to the partnership, and the transfer was recognized as valid by the only remaining voting partner, AFC.[5]

---

4. The record on appeal does not contain defendants' first plea to the jurisdiction, but shows the denial of that plea on April 18, 2003.

5. OAIC contends limited partner Frey was not entitled to vote on the matters at issue, as section 1.10 of the agreement limits Frey's voting rights to amendments to the agreement

## C. Partial Summary Judgment in Favor of OAIC

The trial court granted OAIC's motion for partial summary judgment. Certain findings, relevant to our discussion, were made by the trial court in the order granting partial summary judgment. Finding number 3 states, "[W]ith the status of at least an unadmitted assignee, OAIC is entitled to all of the distributions related to the AFC Interest, including the amounts due on the AFC Preferred Return."

## D. Final Judgment on the Merits

Following a six-day bench trial on the remaining issues, the trial court rendered a final judgment in which the court declared OAIC "was a limited partner in Stonegate Village, L.P. as of March 22, 2001." Further, the court ordered OAIC recover from defendants Stonegate and CAWC $1,703,615.00 in damages for breach of contract and $400,000.00 in attorney's fees, but "take nothing by its causes of action for breach of fiduciary duty and conspiracy to breach fiduciary duty against Defendants CAWC Financial, Inc., and Larry White, Individually." In addition, the court appointed OAIC liquidator of Stonegate and stated that its partial summary judgment was "merged into and affirmed in this Final Judgment." Defendants' counterclaim was denied.

In response to a request from Stonegate and CAWC, the trial court issued findings of fact and conclusions of law. The trial court stated, in its findings of fact numbers 8 and 23, that OAIC was at least "an unadmitted assignee" in Stonegate. In finding of fact number 7, the trial court found, "OAIC Commercial Assets, L.L.C. ("OAIC"), is the owner of all of the AFC Equities interest in Stonegate." Then, in conclusion of law number 5, the trial court

that would adversely affect Frey's economic

stated that "OAIC was a limited partner in Stonegate as of March 22, 2001." We focus upon these findings in determining standing. This appeal followed.

## III. DETERMINATION OF STANDING

Because the determination of OAIC's issues is dependent on our resolution of appellees' first cross-point respecting whether OAIC has standing to bring its claims, we address that cross-point at the outset.

## A. Standard of Review

Standing, a necessary component of subject-matter jurisdiction, is a constitutional prerequisite to maintaining a suit under Texas law. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993). As a necessary component of a court's subject-matter jurisdiction, standing cannot be waived and can be raised for the first time on appeal. *Id.* at 445–46. Appellate courts are obligated to review *sua sponte* issues affecting jurisdiction. *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex.2004). *See also Bowles v. Wade*, 913 S.W.2d 644, 647 (Tex.App.-Dallas 1995, writ denied); *Centurion Planning Corp., Inc. v. Seabrook Venture II*, 176 S.W.3d 498, 508 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

Whether a trial court has subject-matter jurisdiction is a question of law that is reviewed de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). To have standing, the pleader bears the burden of alleging facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Air Control Bd.*, 852 S.W.2d at 446. We review the pleadings and the entire record to determine if there is evidence establishing

rights under the agreement.

**736**

subject-matter jurisdiction. *Dallas County Appraisal Dist. v. Funds Recovery*, 887 S.W.2d 465, 469 (Tex.App.-Dallas 1994, writ denied).

▮ In an appeal from a bench trial, findings of fact carry the same weight as a jury verdict. *Walker v. Cotter Prop., Inc.*, 181 S.W.3d 895, 899 (Tex.App.-Dallas 2006, no pet.). Unchallenged findings of fact are conclusive on appeal unless the contrary is established as a matter or law or there is no evidence to support the findings. *Toles v. Toles*, 45 S.W.3d 252, 265 n. 6 (Tex.App.-Dallas 2001, pet. denied) (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986)). Where an appellant attacks the trial court's findings of fact on legal or factual sufficiency grounds, the applicable standard of review is the same as that to be applied in the review of jury findings. *Walker*, 181 S.W.3d at 899. In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 414 (Tex. App.-Dallas 2006, pet. denied) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005)). Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *Walker*, 181 S.W.3d at 899. More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of some vital fact. *Id.*

▮ We review the trial court's conclusions of law de novo to determine whether they are correct. *See McIntyre v. Comm'n for Lawyer Discipline*, 169 S.W.3d 803, 806 (Tex.App.-Dallas 2005, pet. denied); *Travelers Indem. Co. of Rhode Island v. Starkey*, 157 S.W.3d 899, 906 (Tex.App.-Dallas 2005, pet. denied).

Conclusions of law must be upheld on appeal if any legal theory supported by the evidence sustains the judgment, and will be reversed only if the conclusions are erroneous as a matter of law. *See McIntyre*, 169 S.W.3d at 807.

### B. Applicable Law

#### 1. Standing, Generally

▮ In Texas, the standing doctrine requires that (1) there be "a real controversy between the parties," and (2) that real controversy "will be actually determined by the judicial declaration sought." *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex.1996) (quoting *Tex. Air Control Bd.*, 852 S.W.2d at 446). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr. v. Lovato*, 171 S.W.3d 845, 848 (Tex.2005) (quoting 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d* § 1559, 441 (2d ed.1990)). "The determination of whether a plaintiff possesses standing to assert a particular claim depends on the facts pleaded and the cause of action asserted." *Everett v. TK–Taito, L.L.C.*, 178 S.W.3d 844, 853 (Tex. App.-Fort Worth 2005, no pet.). *See also M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 707–08 (Tex.2001) (analyzing standing in the context of asserted claim).

▮ When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis. *Everett*, 178 S.W.3d at 851. The plaintiff must allege and show how he has been injured or wronged within the parameters of the language used in the statute. *Id.*

## 2. Construction of the Agreement

The agreement provides that "[t]he laws of the State of Georgia (without regard to its conflicts of law principles) and any applicable Federal Laws shall govern the validity of this Agreement, the construction of its terms, the interpretation of the rights and duties of the Partners and any claims, counterclaims or any other matters relating hereto or in connection herewith (whether based on contract, tort or otherwise)." Georgia law provides that construction of a contract, at the outset, is a question of law. *RLI Ins. v. Highlands on Ponce, LLC,* 280 Ga.App. 798, 635 S.E.2d 168, 171 (2006); *Woody's Steaks, LLC v. Pastoria,* 261 Ga.App. 815, 584 S.E.2d 41, 43 (2003). If the language of a contract is unambiguous, the court simply enforces the contract according to its clear terms, and looks to the contract alone for meaning. *RLI,* 635 S.E.2d at 171; *Caswell v. Anderson,* 241 Ga.App. 703, 527 S.E.2d 582, 582 (2000). "Ambiguity" is defined as duplicity, indistinctness, or an uncertainty of meaning or expression. *RLI,* 635 S.E.2d at 171.

### C. Application of Law to Facts

#### 1. Breach of Contract Claims

In their first cross-point, Stonegate and CAWC claim OAIC has no standing to bring its claims. The specific basis for that contention is that OAIC can only bring its claims if, under the agreement, it is at least an "unadmitted assignee" of the interest of a former limited partner, AFC, which OAIC claims to have purchased. Appellees assert the attempted transfer of AFC's interest to OAIC on January 18, 2000, was "null and void" because AFC did not provide a securities opinion "satisfactory" to Stonegate as required by section 9.3(d)(ii) of the agreement. Therefore, Stonegate and CAWC argue, OAIC obtained no interest from AFC and "is not an assignee of any kind." Thus, according to appellees, OAIC lacks standing to bring suit for breach of the agreement. Stonegate and CAWC "challenge the trial court's findings of fact nos. 5, 6, 7, 8, 13, 14, 15, and 18 with respect to standing."[6]

OAIC argues that under the agreement, it is at least an "unadmitted assignee" and it asserts its standing is well-founded. According to OAIC, the agreement expressly gave AFC an "absolute right to transfer all or any portion of its interests." Based on that right, OAIC contends, AFC assigned all of its interests to OAIC on January 18, 2000, thereby making OAIC the owner of the AFC interest. OAIC argues the agreement provides that "following AFC's transfer of its interest to OAIC, OAIC was either (1) an unadmitted assignee entitled to receive all of the allocations and distributions of its transferor or (2) a limited partner, by either registering the interest

---

**6.** Specifically, Stonegate and CAWC assert there is legally insufficient evidence to support the trial court's findings of fact numbers 5, 6, 7, 8, and 13. Those findings read as follows:

 5. Pursuant to the Stonegate Limited Partnership Agreement, AFC Equities had an absolute right to transfer any or all of its interest at any time.
 6. On or about January 18, 2000, AFC Equities assigned all of its right, title and interest in and to Stonegate to Plaintiff.

7. OAIC Commercial Assets, L.L.C. ("OAIC"), is the owner of all of the AFC Equities interest in Stonegate.
8. At a minimum, OAIC on January 18, 2000 was an unadmitted assignee in Stonegate.
. . . .
13. No later than March 22, 2001, OAIC had provided the general partner, CAWC, with all paperwork necessary under the Stonegate Village Limited Partnership Agreement to establish its right to be a limited partner as an assignee of AFC Equities Limited Partnership.

or by obtaining an attorney opinion letter stating that registration is not necessary under the securities laws." OAIC contends, "As required by [the agreement], OAIC obtained a letter from counsel rendering an opinion that the offering and sale of the AFC Interest from AFC to OAIC was exempt from registration under the Securities Act of 1933 and not otherwise in violation of the applicable laws regulating the transfer of securities." Moreover, OAIC argues, "Even if the transfer was somehow not otherwise sufficient, at the time it occurred, White's and CAWC's actions had already placed them in default status, and the transfer was recognized as valid by the only remaining voting partner—AFC." Finally, OAIC asserts counsel for White and CAWC "expressly admitted" OAIC was at least an unadmitted assignee.

■ In order to establish standing to maintain a breach of contract action, a plaintiff must show either third-party beneficiary status or privity. *Neal v. SMC Corp.*, 99 S.W.3d 813, 817 (Tex.App.-Dallas 2003, no pet.); *Redmon v. Griffith,* 202 S.W.3d 225, 239 (Tex.App.-Tyler 2006, pet. denied). For purposes of standing, "[p]rivity is established by proving that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff." *Id.*

We conclude, and the parties do not dispute, that in order to have standing to sue for breach of the agreement, OAIC must be at least an "unadmitted assignee" as defined by the agreement. According to section 9.5 of the agreement, an "unadmitted assignee" is "a Person who acquires one or more Interests but who is not admitted as a Limited Partner pursuant to *Section 9.6.*" However, it is our conclu-

sion, for the reasons described below, there is no evidence in the record to support the following pivotal findings of fact and conclusion of law: (1) finding of fact number 7 that OAIC "is the owner of all of the AFC Equities interest in Stonegate"; (2) finding of fact number 8, where the trial court stated that "[a]t a minimum, OAIC on January 18, 2000 was an unadmitted assignee in Stonegate"; (3) finding of fact number 23 that "OAIC, who is at least an unadmitted assignee in the Limited Partnership, is qualified to serve as the Liquidator"; and (4) conclusion of law number 5, that "OAIC was a limited partner in Stonegate as of March 22, 2001."

a. Requirements of Section 9.3(d)(ii) of the Agreement

■ We begin our analysis with an examination of whether OAIC acquired AFC's interest in Stonegate through the purported transfer by AFC on January 18, 2000. The agreement provides in section 9.2(a) that "AFC shall have an absolute right to Transfer all or any portion of its Interest (any such Transfer being referred to as a 'Permitted Transfer.')." However, section 9.3, titled "Conditions to and Restrictions on Permitted Transfers," contains the following provision:

(d) *Restrictions.* Either (i) the interests shall be registered under the Securities Act of 1933, as amended, and any applicable state securities laws,[7] or (ii) the transferor shall provide an opinion of counsel satisfactory to the Partnership, to the effect that the Transfer is exempt from applicable registration requirements and will not violate any applicable laws regulating the Transfer of securities.

Further, section 9.3 specifically provides, "This *Section 9.3* does not apply to a Permitted Transfer under *Section 9.2(a)* or

***

7. The parties do not assert applicability of section 9.3(d)(i) of the agreement to this case.

*(b),* except that *Section 9.3(d)* shall apply to any Permitted Transfer under *Section 9.2(a)."*

The record shows OAIC asserted in its original and first two amended petitions, "The Partnership Agreement provides that AFC had an absolute right to assign its interest (art. 9.2a), subject only to an opinion of counsel either that the partnership interest had been registered as a security or that such transfer is exempt from applicable reporting requirements under the securities laws (art. 9.3d)." No party contends the agreement is ambiguous. Accordingly, we "simply enforce the contract according to its clear terms." *See Caswell,* 527 S.E.2d at 582. We conclude that, under the clear and unambiguous language of the agreement, a "Permitted Transfer" pursuant to section 9.2(a) is subject to the restrictions of section 9.3(d).

OAIC argues, "As required by the Partnership Agreement, OAIC obtained a letter from counsel rendering an opinion that the offering and sale of the AFC Interest from AFC to OAIC was exempt from registration under the Securities Act of 1933 and not otherwise in violation of the applicable laws regulating the transfer of securities." We are directed to an opinion letter in the record of March 22, 2001, provided by OAIC to Stonegate.

According to the record, the March 22, 2001 opinion letter sent to Stonegate by OAIC was specifically "rejected" in a March 23, 2001 letter to Steven Chantelois from James Mosser, counsel for Stonegate. In the March 23, 2001 letter, Mosser stated that AFC "did not in the past and has not presently supplied an opinion of counsel satisfactory to [Stonegate]." Importantly, the language of section 9.3(d)(ii) provides in relevant part that "the trans-

feror shall provide an opinion of counsel *satisfactory to the Partnership,* to the effect that the Transfer is exempt from applicable registration requirements and will not violate any applicable laws regulating the Transfer of securities." (emphasis added). Moreover, AFC's parent corporation acknowledged in an April 12, 2001, "Officer's Certificate and Release Agreement" signed by Steven Chantelois that "AFC, as assignor of the subject Stonegate interest, did not at the time of sale or assignment of the AFC interest in Stonegate provide and has not yet provided an opinion of counsel *satisfactory* to Stonegate, or to Stonegate's General Partner, to the effect that the sale and assignment is exempt from applicable registration requirements and will not violate any applicable laws regulating the sale, assignment or transfer of securities." (emphasis added). Accordingly, the record contains no evidence OAIC or AFC provided an opinion letter "satisfactory to the Partnership," as required by section 9.3(d)(ii).

As a counter-point to Stonegate's claim it "rejected" the section 9.3(d)(ii) opinion letter, OAIC contends CAWC, as a "defaulting partner" did not have the right to "approve or disapprove the [March 22, 2001] opinion letter, and, in any event, did not need to do so." OAIC asserts:

At the time that AFC sold and assigned its interest to OAIC on January 18, 2000, CAWC was already in default because of the secret, unapproved, self-dealing loans with affiliates. AFC was the only non-defaulting partner entitled to approve documentation regarding its Permitted Transfer under 9.2(a), and it did so by executing the transfer documents.[8]

8. OAIC asserts the requirements of section 9.3(d)(ii) were satisfied on both January 18,

2000, and March 22, 2001. According to OAIC:

In support of its argument, OAIC cites the trial court's partial summary judgment order, in which the trial court found, as a matter of law, that "the General Partner and CAWC/Stonegate L.P. are 'Defaulting Partners' under the terms of the Limited Partnership Agreement from and after June 23, 1999." Stonegate, CAWC, and White argue that "whether CAWC lacked formal 'Approval' or voting rights is inapplicable to § 9.3(d)(ii)."

The agreement provides no definition of "satisfactory." To support its argument that CAWC could not, as a defaulting partner, make a determination whether the opinion letter was "satisfactory" under section 9.3(d)(ii), OAIC relies on the definition of "Approval or Approved" set out in section 1.10 of the agreement:

> "*Approval*" or "*Approved*" means the affirmative written approval on that matter pursuant to *Article VII*[9] of (i) Partners (or a specified class thereof) [other than AFC] that hold more than seventy-five percent (75%) of the Interests then held by Partners, or the Partners in that class, if applicable and (ii) AFC; provided, however, a Defaulting Partner and any Affiliate thereof shall not have a right to vote on any matter (either directly or through the Designated Representatives of that Defaulting Partner or its Affiliates) ....

The defined terms "Approval" and "Approved" are used throughout the agreement, including Article IX. For example, section 9.3(b), which sets forth conditions and restrictions on transfers of partnership interests by Frey and CAWC, states that the requirement that a transferor "furnish to the Partnership an opinion of counsel satisfactory to the Partnership that the Transfer shall not cause the Partnership to terminate for Federal income tax purposes" can be waived "upon the Approval of the Partners." Section 9.7(a) provides partners will not transfer interests on securities markets or secondary markets "not Approved by the Partners." Section 9.8 allows for profits and losses with respect to transferors and transferees to be divided and allocated "using any conventions permitted by law and Approved by the Partners." The terms "Approval" and "Approved," as used in the agreement, clearly provide for a vote as specified in section 1.10.

However, the terms "Approval" and "Approved" are absent from section 9.3(d)(ii). OAIC identifies nothing in the agreement that indicates the determination of whether a letter is "satisfactory" under section 9.3(d)(ii) requires a vote of the partners, as certain actions require under section 9.3. Further, even assuming, without deciding, that CAWC was in default of the agreement "from and after June 23, 1999," we see nothing in the agreement that would disqualify CAWC from taking part in the determination, under section 9.3(d)(ii), of whether the opinion of counsel obtained by OAIC was "satisfactory to the Partnership." Ac-

---

At the time of the [January 18, 2000] sale, the transaction documents for each financial institution [AFC and OAIC] contained appropriate investment representations and warranties, and counsel for both [AFC] and [OAIC] signed ... opinion letters confirming that no consent, approval, or filing with governmental authorities was required to consummate the transaction. While there was a problem locating original transaction documents, signed copies of original docu-

ments were validated by witnesses as part of the trial.

**9.** Article VII of the agreement, titled "Approval," sets out requirements for actions and decisions requiring "Consent." Section 1.10 of the agreement provides that " 'Consent' means, on any matter, Approval or Unanimous Consent, on that matter, as the case may be."

cordingly, there is no evidence in the record to support OAIC's argument that AFC was the only partner entitled to approve documentation regarding its "Permitted Transfer."

We conclude that, under the unambiguous language of the agreement, in order for AFC's purported transfer of its interest to constitute a "Permitted Transfer" pursuant to section 9.2(a) of the agreement, AFC was required, pursuant to the restrictions of section 9.3(d)(ii), to "provide an opinion of counsel *satisfactory to the Partnership,* to the effect that the Transfer is exempt from applicable registration requirements and will not violate any applicable laws regulating the Transfer of securities." (emphasis added). Further, we conclude that because the record contains no evidence AFC or OAIC provided such an opinion, AFC's purported transfer of its interest on January 18, 2000, was not a "Permitted Transfer," but rather, pursuant to section 9.4 of the agreement, was "null and void and of no effect whatever." Accordingly, OAIC did not acquire AFC's interest in Stonegate pursuant to that purported transfer in compliance with the terms of the agreement.

b. Recognition of Purported Transfer Under Section 9.4 of the Agreement

██ Next, as its counter-argument, OAIC contends that even if the transfer was somehow not otherwise sufficient, "at the time it occurred, White's and CAWC's actions had already placed them in default status, and the transfer was recognized as valid by the only remaining voting partner—AFC." OAIC contends AFC's approval of the transfer, at a time the other partners were "defaulting partners" and disqualified from voting, constitutes "Unanimous Consent" to the transfer as required by section 9.4.

Section 9.4 of the agreement provides in relevant part:

*Prohibited Transfers.* Any purported Transfer of Interests that is not a Permitted Transfer is null and void and of no effect whatever; provided that, if the Partnership is required to recognize a Transfer that is not a Permitted Transfer (or if the Partnership, by Unanimous Consent and in its sole discretion elects to recognize a Transfer that is not a Permitted Transfer), then the Interest Transferred shall be strictly limited to the transferor's rights to allocations and distributions provided by this Agreement with respect to the Transferred Interests. . . .

Section 1.10 of the agreement provides, "'*Unanimous Consent*' means, with respect to any matter, the affirmative written approval on that matter pursuant to *Article VII* of all of the Partners (or a specified class thereof); provided, however, a Defaulting Partner and any Affiliate thereof shall not have a right to vote on any matter (either directly or through the Designated Representatives of that Defaulting Partner or its Affiliate)." (emphasis original).

Article VII of the agreement, titled "*Approval,*" provides in relevant part in section 7.1 that "[a]ctions and decisions requiring Consent may be authorized or made either by vote of the required Partners taken at a meeting of the required Partners or by written consent of same without a meeting." Section 7.4 of Article VII, titled "*Records,*" provides that the partnership shall maintain permanent records of all actions taken by the partners pursuant to any provision of the agreement, including "copies of actions on which the Partners have given Consent." Even assuming, without deciding, that, as OAIC argues, AFC was the only partner qualified to vote on partnership matters on

January 18, 2000, OAIC points to no evidence in the record of "affirmative written approval" by AFC pursuant to the express terms of the agreement to "recognize a Transfer that is not a Permitted Transfer."

### c. Alleged Admissions OAIC is "Unadmitted Assignee"

▇▇▇ Now, we address OAIC's counter-argument that counsel for Stonegate, CAWC, and White "expressly admitted" OAIC was at least an unadmitted assignee and those parties are therefore "judicially estopped" from denying OAIC holds such status. Under the doctrine of judicial estoppel, a judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it. *Peck v. Peck,* 172 S.W.3d 26, 31 (Tex.App.-Dallas 2005, pet. denied); *see also Webb v. City of Dallas,* 211 S.W.3d 808, 820 (Tex.App.-Dallas 2006, pet. filed). This doctrine is based on the public policy that it would be absurd and manifestly unjust to permit a party to recover after he has sworn himself out of court by a clear and unequivocal statement. *Peck,* 172 S.W.3d at 31. Although the doctrine is most commonly applied to the sworn statements of witnesses, it also applies to the statements of attorneys explaining their clients' position in the litigation. *Webb,* 211 S.W.3d at 820. Five conditions must have occurred for a party's admission to be conclusive against him: (1) the declaration relied upon must have been made in the course of a judicial proceeding; (2) the declaration was contrary to an essential fact embraced in the theory of recovery of defense asserted by the party; (3) the statement was deliberate, clear, and unequivocal; (4) giving conclusive effect to the declaration would not run contrary to public policy; and (5) the declaration related to a fact upon which a judgment for the opposing party was based. *Peck,* 172 S.W.3d at 31. The party asserting judicial

estoppel has the burden to conclusively prove each of the elements. *DeWoody v. Rippley,* 951 S.W.2d 935, 944 (Tex.App.-Fort Worth 1997, writ dism'd by agr.)

▇▇▇ In its reply brief on appeal, OAIC contends counsel for Stonegate, CAWC, and White "expressly admitted in a letter to AFC that OAIC was at least an unadmitted assignee." OAIC cites a March 2, 2001 letter from James Mosser to AFC and various "persons claiming interests in Stonegate Village, L.P." in which Mosser questions the validity of AFC's purported assignment of its partnership interest and states he has been unable to obtain any documentary evidence of such a transfer. However, OAIC has not shown the March 2, 2001 letter to be a declaration "made in the course of a judicial proceeding." Moreover, Mosser states in the letter, "The effect of these events is that whomever takes or owns the former interests of AFC Equities, L.P., shall only be an Unadmitted Assignee.... The AFC Equities, L.P., assignees are not and shall not be admitted as partners." The letter does not make the precise admission asserted by OAIC. Rather than constituting a "deliberate, clear, and unequivocal" admission that OAIC is "at least an unadmitted assignee," Mosser's letter, on its face, merely clarifies that if evidence is produced that a proper transfer of AFC's interest did, in fact, take place, the transferees will not be admitted as partners.

▇▇▇ In addition, OAIC argues that in a July 30, 2001 letter brief to the trial court, Mosser: (1) admitted that "[i]n January of 2000, AFC transferred its Interest in Stonegate by assignment to [OAIC], as AFC's assignee;" (2) admitted that "[t]he AFC interests were conveyed to [OAIC] under the Agreement by sale and assignment;" and (3) argued that the purported failure of OAIC to satisfy the require-

ments of section 9.3 merely prevented OAIC from being admitted as a partner, not from obtaining the status of an assignee. In the July 30, 2001 letter brief cited by OAIC, Mosser disputes OAIC's contention that it is a limited partner in Stonegate. Mosser states, "Plaintiff maintains that as an assignee it somehow subsumes to the legal status of Limited Partner." Mosser then asserts arguments respecting OAIC's failure to meet the requirements to become a limited partner as set out in the agreement.

These two clauses quoted by OAIC, indeed, do appear in the letter brief. However, Mosser also states, in the same section in which these two quoted clauses appear, "To this date Plaintiff has never been a limited partner in Stonegate and cannot demonstrate that they are the owner's [sic] of an interest in Stonegate." We conclude the alleged admissions in the July 30, 2001 letter brief cited by OAIC are not deliberate, clear and unequivocal. Therefore, those alleged admissions do not meet the requirements for judicial admissions.

On this record, we conclude there is no evidence that OAIC acquired AFC's interest in Stonegate pursuant to the agreement or that OAIC is at least "an unadmitted assignee" in Stonegate, as stated in findings of fact numbers 8 and 23. We decide in favor of Stonegate and CAWC on their first cross-point.

### 2. Breach of Fiduciary Duty Claims

Now, we move to OAIC's first issue, where it argues the trial court erred in denying its claim for breach of fiduciary duty because CAWC and White owed a fiduciary duty to OAIC "as a limited partner, an unadmitted assignee, and/or the purchaser of AFC's interest." CAWC and White contend the trial court lacked jurisdiction to enter judgment on OAIC's causes of action, including claims for breach of fiduciary duty, because OAIC lacked standing.

■ The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex.App.-Dallas 2006, pet. denied). We determined above that the record contains no evidence OAIC is "at least an unadmitted assignee" in Stonegate pursuant to the agreement. Accordingly, no fiduciary relationship based on status as an "unadmitted assignee" existed between OAIC and CAWC or White pursuant to the agreement.

■ Next, we examine whether CAWC and White owed a fiduciary duty to OAIC "as a limited partner." Section 9.6 of the agreement provides, "Subject to the other provisions of this *Article IX*, a transferee of Interests may be admitted to the Partnership as a Limited Partner only on satisfaction of the conditions set forth below in this *Section 9.6*." Those conditions include, in relevant part:

(a) The admission is approved by Unanimous Consent, which consent may be withheld or granted in each Partner's sole discretion, or the Interests with respect to which the transferee is being admitted were acquired by means of a Permitted Transfer; [and]

. . . .

(d) If the transferee is not an individual, the transferee provides the Partnership with evidence satisfactory to counsel for the Partnership of the power and authority of the transferee to become a Partner and to be bound by the terms and conditions of this Agreement.

OAIC argues that, following AFC's assignment of its interest to OAIC pursuant to section 9.2(a), "OAIC had the status of a limited partner in [Stonegate]." Further, OAIC contends, "If there were any conditions precedent to OAIC becoming a limited partner under the agreement, which OAIC denies, such conditions were met at the latest by March 22, 2001." In support of its argument, OAIC cites the trial court's finding of fact number 13, which states, "No later than March 22, 2001, OAIC had provided the general partner, CAWC, with all paperwork necessary under the Stonegate Village Limited Partnership Agreement to establish its right to be a limited partner as an assignee of AFC Equities Limited Partnership."

CAWC and White argue OAIC is not an assignee of AFC's interest and, therefore, cannot be a limited partner. In addition, CAWC and White assert that "[e]ven if the assignment [of AFC's interest to OAIC] was somehow valid, OAIC was not entitled to admission as a limited partner because OAIC also failed to present evidence that the conditions to admission contained in § 9.6 were satisfied."

With respect to the conditions set out in section 9.6(a), we concluded above that the record contains no evidence OAIC acquired an interest in Stonegate "by means of a Permitted Transfer." Further, OAIC does not identify, and we do not find, evidence in the record of approval of OAIC's admission as a limited partner by "Unanimous Consent." Moreover, the record contains no evidence OAIC provided "evidence satisfactory to counsel for the Partnership" to meet the condition of section 9.6(d). We conclude there is no evidence in the record to support the trial court's finding of fact number 13 or the trial court's conclusion of law number 5, that OAIC was a limited partner. *See McIntyre*, 169 S.W.3d at 806–07 (trial

court's conclusions of law are reviewed de novo and will not be upheld on appeal if erroneous as a matter of law). Accordingly, CAWC and White owed no fiduciary duty to OAIC as a limited partner.

Finally, OAIC argues it brought its breach of fiduciary duty claims "not only in its own right, but also as a successor of AFC and assignee of the AFC limited partnership interest." OAIC asserts that because AFC had an absolute right under section 9.2(a) of the agreement to transfer all of its interest, "[t]o the extent the direct duty owed to OAIC was limited or delayed due to its status as an unadmitted assignee, OAIC stands in the shoes of AFC and is entitled to maintain a breach of fiduciary duty [claim] as AFC's assignee." Based on the foregoing conclusion that the record contains no evidence OAIC acquired AFC's interest in Stonegate, we decide against OAIC on this argument.

We conclude there is no evidence in the record that CAWC and White owed a fiduciary duty to OAIC "as a limited partner, an unadmitted assignee, and/or the purchaser of AFC's interest." We decide against OAIC on its first issue. In addition, based on that determination, we conclude OAIC lacked standing to bring its claims against CAWC and White for breach of fiduciary duty and conspiracy to breach fiduciary duty. *See Jones*, 196 S.W.3d at 447.

### 3. Declaratory Relief

Another part of Stonegate and CAWC's first cross-point asserts there is an error in the trial court's declaratory judgment. In the final judgment, the trial court declared OAIC a limited partner in Stonegate as of March 22, 2001, granted declaratory relief appointing OAIC liquidator of Stonegate, and affirmed its partial summary judgment that OAIC, "with the status of at least an unadmitted assignee," is

entitled to all distributions related to the interest of AFC. Specifically, Stonegate and CAWC assert, in a footnote to their argument in support of their first cross-point, that if this Court determines OAIC was not admitted as a limited partner as of March 22, 2001, the trial court's declaratory judgment respecting OAIC's status as a limited partner should be reversed "because it cannot be used to *alter* OAIC's status and make OAIC a limited partner, but only *declare* OAIC's status as of March 22, 2001." (emphasis original). Further, Stonegate and CAWC argue that, to the extent the trial court erred in finding OAIC an unadmitted assignee as of January 18, 2000, the trial court also erred in finding OAIC qualified to be liquidator because the sole qualification relied upon by OAIC was its alleged status as an unadmitted assignee. OAIC does not specifically address these contentions on appeal. However, with respect to the second contention, OAIC asserted in the trial court that because it has "the status of at *least* an unadmitted assignee" (emphasis original), it is a person, as defined in the agreement, interested in the winding up of Stonegate, and thus, should be entitled to act as liquidator for Stonegate.

Under the Uniform Declaratory Judgments Act, "[a] person interested under a ... contract ... or whose rights, status, or other legal relations are affected by a ... contract ... may have determined any question of construction or validity arising under the ... contract ... and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a) (Vernon 1997). "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." TEX. CIV. PRAC. & REM.CODE ANN. § 37.011 (Vernon 1997). Declaratory judgment under the statute is appropriate only when a real controversy exists between the parties and the entire controversy may be determined by the judicial declaration. *Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 163–64 (Tex.2004); *Adams v. First Nat'l Bank of Bells/Savoy,* 154 S.W.3d 859, 873 (Tex. App.-Dallas 2005, no pet.); *Park Cities Ltd. P'ship v. Transpo Funding Corp.,* 131 S.W.3d 654, 661 (Tex.App.-Dallas 2004, pet. denied).

We concluded above that the record contains no evidence OAIC met the requirements under the agreement to become a limited partner or at least "an unadmitted assignee." Therefore, we conclude OAIC has not shown it is "interested under" or has "rights, status, or other legal relations affected by" the agreement, as required by the Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a). Accordingly, OAIC has no standing to assert its claims for declaratory relief respecting the agreement. *See Grinnell v. Munson,* 137 S.W.3d 706, 712–14 (Tex.App.-San Antonio 2004, no pet.) (plaintiff not in privity to written contract lacked standing to seek declaratory relief respecting contract) (citing *Bruner v. Exxon Co., U.S.A.,* 752 S.W.2d 679, 683 (Tex. App.-Dallas 1988, writ denied) (party not in privity to written lease agreement could not maintain action for wrongful cancellation of lease)). We vacate the trial court's judgment declaring OAIC "a limited partner in Stonegate Village, L.P. as of March 22, 2001," appointing OAIC liquidator of Stonegate, and affirming the partial summary judgment that OAIC, "with the status of at least an unadmitted assignee," is entitled to all distributions related to the interest of AFC. OAIC's claims for declaratory relief are dismissed for lack of jurisdiction.

### 4. Attorney's Fees

OAIC claimed attorney's fees based on chapter 38 of the Texas Civil Practice and

Remedies Code and the Uniform Declaratory Judgments Act. Chapter 38 of the Texas Civil Practice and Remedies Code, titled "Attorney's Fees," allows recovery of "reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs," on a claim for an oral or written contract. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997). The Uniform Declaratory Judgments Act provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997).

Stonegate and CAWC argue in their fifth cross-point that, to the extent this Court reverses the trial court's judgment with respect to OAIC's breach of contract claim, this Court should also reverse the trial court's award of attorney's fees because OAIC is not entitled to attorney's fees under chapter 38 unless it prevails on its breach of contract claim. Further, Stonegate and CAWC contend that to the extent this Court reverses the trial court's judgment on OAIC's declaratory judgment claims, the issue of attorney's fees should be reversed and remanded for reconsideration by the trial court.

The trial court does not state the basis for its award of $400,000 in attorney's fees to OAIC. However, because we concluded above that OAIC lacks standing to bring its claims for breach of contract and declaratory relief, OAIC is not entitled to attorney's fees under either chapter 38 or the Uniform Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8); TEX. CIV. PRAC. & REM.CODE ANN. § 37.009. We vacate the trial court's award of attorney's fees to OAIC and dismiss OAIC's claim for attorney's fees for lack of jurisdiction.

## IV. CONCLUSION

We conclude the record contains no evidence OAIC was "at least an unadmitted assignee" in Stonegate pursuant to the limited partnership agreement. Accordingly, OAIC lacks standing to bring its claims against appellees.

We decide in favor of Stonegate and CAWC on their first and fifth cross-points. OAIC's first issue is decided against it. Because our decisions on those issues are dispositive of this appeal, we need not address the parties' remaining issues. *See* TEX.R.APP. P. 47.1. The judgment of the trial court is vacated and this case is dismissed for lack of jurisdiction.

## OPINION ON MOTION FOR REHEARING

On August 16, 2007, this Court issued its opinion in this case vacating the trial court's judgment and dismissing this case for lack of jurisdiction. After requesting and receiving a fifteen-day extension of time to file its motion for rehearing, appellant OAIC timely filed its motion for rehearing on September 14, 2007. In its motion for rehearing, OAIC asserted four new arguments in support of its contention that OAIC is at least an unadmitted assignee in Stonegate:

1. AFC's obligation to provide a satisfactory securities opinion letter is a covenant, not a condition precedent, and AFC's failure (if any) to do so does not invalidate the assignment or undermine OAIC's standing to protect its investment;

2. Neither Georgia nor Texas law allows an anti-assignment provision to be enforced against an assignee of rights under these circumstances;

3. Whether a condition or covenant, the law excuses performance of an immaterial obligation if enforcement would result in forfeiture; and

4. AFC provided a proper securities opinion letter, and CAWC cannot deny OAIC standing by unreasonably withholding its approval.

OAIC contends its four new arguments "demonstrate that the Court's jurisdictional holding [that OAIC lacks standing] is in direct conflict with existing Texas and Georgia law." This opinion on motion for rehearing does not change the Court's opinion in this appeal. OAIC's motion for rehearing is denied.

 The sole purpose of a motion for rehearing is to provide the court an opportunity to correct any errors on issues already presented. *Wentworth v. Meyer,* 839 S.W.2d 766, 778 (Tex.1992) (Cornyn, J., concurring). "Rehearing is not an opportunity to test alternative arguments after finding other arguments unsuccessful." *ICM Mortgage Corp. v. Jacob,* 902 S.W.2d 527, 535 (Tex.App.-El Paso 1994, writ denied). A motion for rehearing does not afford a party an opportunity to raise new issues after the case has been briefed, argued, and decided on other grounds, unless the error is fundamental. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.,* 150 S.W.3d 579, 591 n. 13 (Tex. App.-Austin 2004, pet. granted). Fundamental error exists "in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas." *Id.* (quoting *Pirtle v. Gregory,* 629 S.W.2d 919, 920 (Tex.1982)).

 OAIC contends the four arguments asserted in its motion for rehearing "each affect the Court's holding that OAIC had no standing to protect its investment." Standing, as a component of subject matter jurisdiction, cannot be waived and "may thus be raised at any time." *West Orange–Cove Consol. I.S.D. v. Alanis,* 107 S.W.3d 558, 583 (Tex.2003). *See also Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 849 (Tex.2005); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445 (Tex.1993). However, the record in this case shows standing was raised first in appellees' original answer in the trial court. Further, in support of their argument that OAIC lacked standing to bring this action, appellees specifically asserted in the trial court and on appeal that as a "condition precedent" to the transfer of its interest, AFC was required to provide a securities opinion "satisfactory to the Partnership" pursuant to section 9.3(d) of the agreement.

OAIC responded to appellees' challenges to standing in the trial court and on appeal by asserting section 9.3(d) was not applicable to AFC's purported transfer of its interest to OAIC. Alternatively, OAIC contended that even if such an opinion were required, appellees had "defaulted" under the agreement prior to the date of the purported transfer and therefore were not entitled to vote respecting any such opinion. Finally, OAIC argued appellees were judicially estopped by their own admissions from denying OAIC is an unadmitted assignee.

Although OAIC asserts that the four arguments raised in its motion for rehearing "affect the Court's holding that OAIC had no standing," none of those four arguments was raised on appeal. Based on the record before us, we conclude the four arguments OAIC asserts for the first time in its motion for rehearing should have been raised in OAIC's original submission in this Court. *See ICM Mortgage,* 902 S.W.2d at 535 (rehearing is not an opportunity to test alternative arguments after finding other arguments unsuccessful). *See also Continental Dredging, Inc. v. De–Kaizered, Inc.,* 120 S.W.3d 380, 400 (Tex. App.-Texarkana 2003, pet. denied) (argu-

ment contesting elements of claim should have been raised in original submission and not in motion for rehearing).

OAIC does not contend "the court lacked jurisdiction," nor does OAIC argue "the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas." *See Pirtle*, 629 S.W.2d at 920. *See also Phifer v. Nacogdoches County Cent. Appraisal Dist.*, 45 S.W.3d 159, 166 (Tex. App.-Tyler 2000, pet. denied) (new argument asserting lack of jurisdiction could be raised for first time in motion for rehearing). Accordingly, because we conclude the arguments asserted by OAIC for the first time in its motion for rehearing do not raise issues of fundamental error, we decline to address those arguments. *See Tex. Mun. Power*, 150 S.W.3d at 591 n. 13.

OAIC's motion for rehearing is denied.