**Rick SUTTON and Stacy McCrimmon, Appellants,**

v.

**EBBY HALLIDAY REAL ESTATE, INC. d/b/a Ebby Halliday Realtors and Diana Morris, Individually, Appellees.**

No. 05–08–00087–CV.

Court of Appeals of Texas, Dallas.

Feb. 6, 2009.

Rehearing Overruled April 14, 2009.

Brian P. Lauten, The Lauten Firm, P.C., Dallas, TX, for Appellant.

J. Kent Newsom, Newsom, Terry & Newsom, L.L.P., Dallas, TX, for Appellee.

Before Justices MORRIS, WHITTINGTON [1], and O'NEILL.

## OPINION

Opinion by Justice MORRIS.

In this case based on alleged fraud in a real estate transaction, a jury awarded Rick Sutton and Stacy McCrimmon $94,700 in compensatory damages, $35,000 in mental anguish damages, and $1 million in exemplary damages. The trial court signed a judgment awarding Sutton and McCrimmon compensatory damages but granted a judgment notwithstanding the verdict as to the mental anguish and exem-

---

1. The Honorable Mark Whittington, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

plary damages. Sutton and McCrimmon bring this appeal seeking a reversal of the JNOV. Ebby Halliday Real Estate, Inc. d/b/a Ebby Halliday Realtors and Diana Morris cross-appeal contending there is legally insufficient evidence to support the jury's findings of various acts of fraud on the part of Morris. We conclude the evidence is legally insufficient to support the jury's verdict in favor of Sutton and McCrimmon. Accordingly, we reverse the trial court's judgment to the extent it awards Sutton and McCrimmon actual damages and attorney's fees and render judgment that Sutton and McCrimmon take nothing by their claims.

## I.

In 2003, Robert Owen and his business partner, Joe Neel, purchased a plot of land in Kaufman County, Texas, for the purpose of building a house for resale. Diana Morris, an agent with Ebby Halliday Realtors, represented Owen and Neel in the transaction. The listing agent for the property was Linda Christenson, who also worked for Ebby Halliday.

Several properties surrounding the lot purchased by Owen and Neel had already been developed at the time of the purchase. According to one of the neighbors, Christenson was told that all of the property in the area flooded and there was a lawsuit pending about the flooding issue. The listing for the property stated that "neighbor of this property has said land is in a flood zone" and "buyer would need to verify." The listing also stated there was "no paper work on file to backup neighbor's statement." Owen testified that he spoke to one neighbor who told him there was "water on that lot." But Owen spoke to another neighbor who stated that he had lived in the neighborhood for many years and had never seen the property flood. Neel verified that the property was

not located in a floodplain, and he and Owen went ahead with the purchase.

During the time that Owen and Neel were building a house on the property, neither of them lived there. Once the house was completed, they listed it for sale and, again, used Diana Morris as their agent. Owen completed a seller's disclosure notice stating he did not know of either a flooding or drainage problem with the property. A new listing was published by Ebby Halliday with no mention of the property potentially being located in a flood zone.

Rick Sutton and his wife, Stacy McCrimmon, became interested in the property and Morris gave them the seller's disclosure notice. Morris then showed them the property. Sutton stated that, while touring the house, he asked Morris if there were any problems with drainage on the property and Morris replied there were not.

After seeing the house, Sutton and McCrimmon hired Dee Evans, also with Ebby Halliday, as their agent to represent them in purchasing the property. As part of the negotiations, Owen agreed to give Sutton and McCrimmon a $4,500 credit on the purchase price. Owen stated that the credit was intended to be used toward installing the final grade for the lot and landscaping the property. Sutton disputed this and stated the credit was intended to be put toward their closing costs. Sutton also said he never discussed installing the final grade on the property with Owen.

Owen had an attorney draft an addendum to be added to the purchase contract that addressed the grade and landscaping of the lot. The proposed addendum stated,

Purchaser, Rick Sutton, acknowledges that he is solely responsible, and Seller is divested of responsibility, for any and all landscaping, final grades and drain-

age issues which may arise or be required in connection with the tract of land the subject of this Contract.

Although Owen gave Morris the addendum to give to Sutton before the closing and Morris stated that she sent the addendum to Evans, the addendum was not included among the documents given to Sutton and McCrimmon either before or at the closing. Morris did not attend the closing and the addendum was not signed.

When Judy Harris, manager of the Ebby Halliday office at which Morris and Evans worked, learned that the addendum had not been signed, she contacted Sutton and sent him a copy of the addendum. According to Harris, Sutton refused to sign the addendum because he did not understand the legal terms. After speaking with Owen, Harris drafted a second addendum in an attempt to make it more understandable. The second addendum stated,

> Purchaser Rick Sutton agrees that he will provide at his expense grading and landscaping on the above referenced property. Rick Sutton, Purchaser acknowledges that Robert Owen, Seller will not be liable for any drainage issues that result from the grading work done by Purchaser.

Sutton refused to sign this addendum as well.

Shortly after moving into the home, Sutton and McCrimmon noticed that the property flooded and held water without draining for weeks at a time after it rained. Sutton dug out the drainage pond in the backyard and attempted to make it deeper, but he stated that the property continued to flood. Water never entered the house, but large portions of the yard would remain under water for long periods of time.

Sutton and McCrimmon filed suit against Ebby Halliday, Morris, and Harris. The couple sought both actual damages as well as exemplary damages based on their assertion that the defendants knew the property flooded and purposefully concealed this information from them. After hearing the evidence, the jury awarded Sutton and McCrimmon $94,700 in compensatory damages, $35,000 in mental anguish damages, and $1 million in exemplary damages. The trial court signed a judgment awarding Sutton and McCrimmon compensatory damages and attorney's fees but granted a judgment notwithstanding the verdict as to the mental anguish and exemplary damages. The trial court further ruled that Sutton and McCrimmon take nothing from Harris. Sutton and McCrimmon bring this appeal challenging the trial court's decision to grant a judgment notwithstanding the verdict on the mental anguish and exemplary damages. Ebby Halliday and Morris bring a cross-appeal contending the evidence is legally insufficient to support the judgment against them for fraud. The jury's findings that Morris, in her capacity as an agent of Ebby Halliday, committed acts of fraud necessarily form the basis for any potential award of mental anguish and exemplary damages. Accordingly, we first address the cross-points of error brought by Ebby Halliday and Morris challenging the jury's findings.

## II.

In their fourth, fifth, and sixth cross-points of error as well as their third reply point, Ebby Halliday and Morris challenge the legal sufficiency of the evidence to support the jury's findings that Diana Morris (1) engaged in a false, misleading, or deceptive act or practice, (2) committed fraud, (3) made a negligent representation, (4) committed statutory fraud, and (5) secured the execution of a document by deception. When parties attack the legal sufficiency of the evidence sup-

porting an adverse finding on an issue on which they did not have the burden of proof, they must show there is no evidence to support the adverse finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence, as a whole, would enable reasonable and fair-minded people to differ in their conclusions. *See OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P.,* 234 S.W.3d 726, 736 (Tex.App.-Dallas 2007, pet. denied). We view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *See OAIC,* 234 S.W.3d at 736.

The court's charge on all five claims against Morris required a finding that Morris had actual knowledge of the defective condition of the property.[2] In effect, Sutton and McCrimmon were required to prove that Morris knew the property flooded and either misrepresented the condition of the property or failed to disclose this information. Morris and Ebby Halliday contend the evidence presented at trial is legally insufficient to support a finding that Morris had knowledge of the condition of the property at the time it was purchased by Sutton and McCrimmon. After reviewing the entirety of the evidence, we agree.

The following are the facts that Sutton and McCrimmon contend support the jury's finding of knowledge: Morris was the real estate agent representing Owen and Neel both in their purchase of the property in 2003 and their later sale of the property to Sutton and McCrimmon; before Owen and Neel purchased the property, the listing stated that a "neighbor of this property has said land is in a flood zone" and "buyer would need to verify;" the agent who spoke to the neighbor about the flooding issue worked in the same office as Morris; the contract Morris drafted for Owen's purchase of the property provided that the "buyer is responsible to verify flood plain;" and, when Sutton and McCrimmon later saw the property, the listing no longer included any information about its possible location in a flood plain.

2. The pertinent portions of the jury instructions are as follows:

Under Question No. 1 pertaining to the claim for false, misleading, or deceptive act or practice, the jury was instructed that the term false, misleading, or deceptive act or practice means "failing to disclose information about the property that was known at the time of the transaction...."

Under Question No. 2 pertaining to fraud, the jury was instructed that fraud occurs "when a party fails to disclose a material fact within the knowledge of that party...."

Under Question No. 3 pertaining to negligent misrepresentation, the jury was instructed that "real estate agents are not required to inspect property prior to sale to discover its condition." The jury was further instructed that "real estate agents and brokers are not liable for a misrepresentation or a conceal-ment of a material fact made by a seller in a real estate transaction unless the agent or broker (1) knew of the falsity of the misrepresentation or concealment; and (2) failed to disclose their knowledge of the falsity of the misrepresentation or concealment."

Under Question No. 4 pertaining to statutory fraud, the jury was instructed that fraud occurs when "a person has actual awareness of the falsity of a representation or promise made by another person...."

Under Question No. 13 pertaining to securing the execution of a document by deception, the jury was instructed that "deception" means "creating or confirming by words or conduct a false impression of law or fact that is likely to affect another in the transaction, and that the actor does not believe to be true."

Before closing, Owen provided Morris with an addendum drafted by his lawyer stating that Owen would be "divested of responsibility, for any and all landscaping, final grades and drainage issues which may arise or be required" in connection with the property. Morris assured Owen that the addendum would be signed by Sutton and McCrimmon. Evans, the agent representing Sutton and McCrimmon, testified that, although she worked in the same office as Morris, she never received the addendum. It is undisputed that Sutton and McCrimmon did not see the addendum until after they closed on their purchase of the house and they would not have purchased the house if they had seen the addendum first.

Sutton and McCrimmon contend that both the earlier MLS listing and the addendum show that Morris had knowledge of the flooding issues associated with the property before they purchased the house from her client. But, even reading the evidence in the light most favorable to the jury's verdict, as we are compelled to do, we conclude this evidence amounts to no more than a scintilla to show that Morris had prior knowledge of flooding problems.

The listing upon which Sutton and McCrimmon rely stated that a neighbor indicated the land was in a flood zone and the buyer would need to verify this. The listing also stated, however, that there was "no paper work on file to backup neighbor's statement." The evidence shows that Morris did as the listing recommended and was told by Neel, as buyer, that the property was *not* located in a floodplain.

Sutton and McCrimmon point to the testimony of their expert witness in which he stated that, *in his opinion,* the property was located in a floodplain. His testimony shows, however, that his opinion was based solely on the fact that the property floods and not on any official records or public documents. Indeed, other evidence admitted at trial shows that the property was not located in any recorded floodplain. Nor was it located in a Federal Emergency Management Agency flood hazard area. Even if the property had been located in a recorded floodplain, Morris was told by her client that it was not. Because the listing indicated only that the buyer would need to verify whether the property was in a floodplain, and the buyer in this case stated the property was not, the listing itself provides no evidence to support a finding that Morris was aware of a flooding problem.

Sutton and McCrimmon also presented evidence that the neighbor referenced in the listing told Ebby Halliday that the property "flooded," not that it was in a flood zone. But this statement was made to Ebby Halliday agent Linda Christenson, not to Morris. There is no evidence that Christenson ever told Morris that the property flooded. Furthermore, Sutton and McCrimmon provide no authority to impute Christenson's knowledge to Morris, and we decline to do so. *Cf. Pfeiffer v. Ebby Halliday Real Estate, Inc.,* 747 S.W.2d 887, 890 (Tex.App.-Dallas 1988, no writ) (real estate agent will not be charged with "common knowledge" of other agents).

As for the addendum, this document was drafted by Owen and his attorney. There is no evidence that Morris was involved in its creation. She was merely given the addendum to present to Sutton and McCrimmon as part of the purchase contract. Nothing in the addendum itself indicates that there was a pre-existing flooding problem with the property. The addendum, therefore, provides no evidence that Morris had any knowledge the property had flooding issues at the time it was purchased by Sutton and McCrimmon.

Based on the foregoing, we conclude there is no evidence of probative force to show that Morris had any knowledge of flooding issues with the property at the time it was purchased by Sutton and McCrimmon. Accordingly, there is no evidence to support the jury's affirmative findings in response to questions Nos. 1, 2, 3, 4, and 13 of the court's charge. We sustain Ebby Halliday and Morris's fourth, fifth, and sixth cross-points of error as well as their third reply point. It is unnecessary for us to address the remaining points of error and cross-points of error brought by the parties.

We reverse the trial court's judgment to the extent it awards Sutton and McCrimmon actual damages and attorney's fees. We affirm the trial court's judgment in all other respects.