**Opinion issued December 28, 2012**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-11-00635-CV

—————————————

**CYNTHIA ANN FLEMING, Appellant**

**V.**

**DAVIS HAYS FLEMING, JR., Appellee**

---

**On Appeal from the 312th District Court**
**Harris County, Texas**
**Trial Court Case No. 2007-09643**

---

## MEMORANDUM OPINION

In this post-divorce division of marital property case, appellant, Cynthia

Fleming ("Cindy"), petitioned the trial court to divide alleged community assets

that the court did not divide in the original divorce decree dissolving her marriage

to appellee, Davis Fleming ("Davis"). The trial court denied this petition and refused to divide the alleged marital assets. In two issues, Cindy contends that the trial court erred in failing to divide (1) Davis's alleged ownership interest, or the proceeds from the sale of his ownership interest, in Con-Dive, L.L.C. ("Con-Dive"), a company in which he had previously been a member; and (2) Davis's alleged outstanding stock options, or proceeds from the exercise of these options, granted to him by his former employer, Stolt Offshore, S.A. ("Stolt").

We affirm.

## Background

During the pendency of Cindy and Davis's divorce, the trial court signed an agreed temporary order, which provided, among other things:

> *Sale of Stock Options*. IT IS ORDERED that DAVIS HAYS FLEMING, JR. shall, on or before September 1, 2005, pay to CYNTHIA ANN FLEMING 50% of the net proceeds from the sale of all stock options issued by [Stolt], which amount shall be applied to any attorney's fees incurred by [Cindy] in this proceeding.

> IT IS FURTHER ORDERED that [Davis] shall not exercise any other stock options granted to him by [Stolt] without the express written consent of [Cindy].

The trial court signed the final divorce decree on July 27, 2006. This decree divided Cindy and Davis's community property, including Davis's retirement benefits "in the Stolt Offshore Inc., 401k Profit Sharing Plan and Trust

2

(administered by Charles Schwab) arising out of [Davis's] employment with Stolt Offshore." The decree did not include a specific division of stock options.

On February 19, 2007, Cindy filed an "Original Petition for Post-Divorce Division of Property," and she named both Davis and Con-Dive, a Louisiana limited liability company, as respondents. Cindy alleged that the divorce decree "failed to dispose of the parties' marital interest in Con-Dive," and she requested that the court divide the ownership interest in a just and right manner.[1] Cindy also requested the award of exemplary damages against Con-Dive, which, she alleged, was "actively assisting" Davis in concealing his ownership interest in the company and was perpetuating an "ongoing fraud" against her. Cindy later nonsuited her claims against Con-Dive.

At trial, Cindy testified that she brought the post-divorce proceeding because "at the time of divorce [she] could not prove that [Davis] had the ownership in [Con-Dive] that he was denying that he owned." She stated that, around October 2005, Davis left his employment at Stolt, and he "tried to get rid of [Stolt] stock options without [her] knowing about it." Cindy alleged that Davis had stock options from Stolt, and she knew that he exercised some options and then sold

---

[1]    Cindy's amended petition, which is not included in the clerk's record, additionally requested that the trial court divide Davis's Stolt stock options that remained outstanding and unexercised on the date of divorce.

3

those shares in 2005 and 2006. She believed that Davis had an additional 2,250 shares of Stolt stock that were not divided in the divorce decree.

Cindy also testified that Con-Dive was a company formed in September 2005 "to buy boats and do diving offshore to repair pipes" and owned by Davis, Duane Smith, and Kevin Lorio. Cindy testified that Davis had signed Con-Dive's Operating Agreement on November 11, 2005, which reflected that he owned 5% of the company and that his initial capital contribution was $25,000. Cindy introduced, and the trial court admitted, a document entitled "Action by Requisite Vote of Membership Interests of Con-Dive, L.L.C." that attempted to remove Davis and Lorio as Con-Dive members because they had failed to pay their initial capital contribution.[2] This document was executed July 28, 2006, the day after the trial court signed the final divorce decree. Cindy testified that she derived no benefit from Davis's interest in Con-Dive and that she never received any share of Davis's ownership interest or his salary or bonuses.

Davis testified that he had shares in Stolt, but only as part of his 401(k). He believed that the last time that he had sold any Stolt shares was in November

---

[2] Although this document refers to deleting the interests of "Messrs. Davis and Lorio," the document also states that the Con-Dive Operating Agreement provided that "Davis H. Fleming, Jr." had contributed $25,000 for a membership interest, but that "Davis H. Fleming, Jr." had, in fact, failed to contribute his required initial capital contribution.

4

2005.[3] He stated that the divorce decree did not award stock to either him or Cindy, other than what was included in his 401(k), but all of his Stolt stock options had been exercised and the resulting stock sold prior to that date. Davis testified that he believed that he had to exercise the stock options before he left his employment at Stolt or he would lose them. He also testified that, pursuant to the trial court's agreed temporary order, he paid Cindy 50% of the proceeds from the options that he had exercised and that he did not exercise any options after agreeing to the temporary order. Davis unequivocally testified that he never concealed from Cindy any Stolt stock options, or proceeds from the exercise of Stolt stock options, and that he had no stock options available to him on the date of the final divorce decree.

Davis also repeatedly testified that he never had an ownership interest in Con-Dive and that he was formally removed from Con-Dive records as a member on July 28, 2006. He stated that he was removed because he had never paid his required capital contribution to the company. In March 2007, Davis received

---

[3] In his deposition, Davis testified that he exercised some of his Stolt stock options to purchase 250 shares of stock, which he then sold for $10,721.11, in February 2006. At trial, Davis testified that he believed his deposition testimony was incorrect.

5

$550,000 in bonuses from Con-Dive.[4]  He testified that he received this bonus because of the "work [he] performed" for Con-Dive, not as a result of cashing out an ownership interest in Con-Dive.

The trial court also admitted the deposition testimony of several individuals associated with Con-Dive, including Wesley Freeman, Lorio, Greg Ruiz, and Smith, who testified concerning whether Davis had an ownership interest in Con-Dive.  Freeman, a managing director and former CEO of Con-Dive, testified that he and Smith formed Con-Dive and that "there was [the] opportunity for two other minor interest partners that had the opportunity to—to be part of [Con-Dive] that never fulfilled it," referring to Lorio and Davis.  According to Freeman, Smith was the only other person who "actually had any money in [Con-Dive]," and Davis never owned an interest in Con-Dive because he never made his capital contribution.  Freeman also testified that, in 2007, the Con-Dive leadership decided to pay bonuses to all Con-Dive employees, regardless of whether they had an ownership interest in the company, and they "rated [the employees'] value to the company and what they'd done" for the company to determine the bonus amounts.

Lorio characterized both himself and Davis as 25% owners of Con-Dive, but he testified that their ownership percentages decreased to 5% several months after

_____

[4]  Davis acknowledged that an unrelated company called Patty-Cam, which held a 5% ownership interest in Con-Dive, like Cindy alleged that Davis himself owned, later sold its interest in the company for around $600,000.

Con-Dive formed. He testified that he "believed" that Davis made his initial contribution in cash, but he also stated that it was possible to become an owner through "sweat equity" by bringing in accounts for the company. He stated that he and Davis were both "under the impression" that they were owners of Con-Dive.

Ruiz previously worked as a civil engineer with a company called W&T, which did business with Con-Dive. He testified that he personally knew the "forming partners" of Con-Dive: Kevin Lorio, Davis Fleming, and Duane Smith. To his understanding, these three men were the owners of Con-Dive at the time that W&T contracted with Con-Dive. Ruiz testified that, during contract negotiations, Davis represented that he owned an interest in Con-Dive.

Smith testified that he was not sure who the original owners of Con-Dive were, and, although he thought that he was the original owner of the company, he stated that the owners "could have been a combination of [another company called Conmaco], [himself], Davis Fleming, and Kevin Lorio." He acknowledged that, at one point, he, Davis, and Lorio were involved in "the process of negotiating . . . an ownership structure" for Con-Dive. He also acknowledged that it "could be true" that Davis's work on behalf of Con-Dive "was what was performing some of his capital contributions," but he did not know for sure. He stated that "if [Davis] put in $25,000, it was probably sweat equity."

At the end of the trial, the trial court stated that it would read the deposition testimony and take the case under advisement. On March 16, 2011, the trial court sent the parties a letter rendering judgment.[5]

After the trial court's rendition letter, Cindy filed a "Motion for Clarification of Rendition," in which she argued that the rendition letter did not address the fact that she demonstrated at trial that Davis "had sole control and management over his negotiated relationship with Con-Dive LLC, and if the court found that [Davis] did not tender or otherwise fund his initial capital requirement . . . his failure was a breach of his obligation to the community." She argued that Davis should be disgorged of the "windfall" he received from Con-Dive and that that amount should be split between them. She also argued that 2,250 Stolt shares were not sold in 2006 and were not represented in Davis's 2005 Form 1099. She stated that at least 2,000 shares remained outstanding and were not divided in the divorce decree. She requested that the trial court address these "omitted issues."

On May 13, 2011, the trial court signed an "Order on Petition for Post-Divorce Division of Property and on Motion for Clarification of Rendition." In this order, the trial court issued the following findings relevant to Cindy's petition for post-divorce division of property:

1. The Court finds that the evidence does not support a finding that [Davis], held an ownership interest in Con-Dive, L.L.C.,

---

[5] This letter is not included in the clerk's record.

that remained undivided from the original judgment of divorce rendered on July 27, 2006. The Court therefore denies relief as requested in Paragraph 3(a) of the First Amended Petition for Post-Divorce Division of Property.

2.    The Court further finds that the evidence does not support a finding that [Davis] concealed the proceeds of the sale of stock options received from Stolt Offshore, Inc., that remained undivided from the original judgment of divorce rendered on July 27, 2006. The Court therefore denies relief as requested in Paragraph 3(b) of the First Amended Petition for Post-Divorce Division of Property.

The trial court also denied Cindy's requests for clarification of rendition concerning Davis's alleged Con-Dive ownership interest and his alleged outstanding Stolt stock options. Cindy moved for a new trial, which was overruled by operation of law. This appeal followed.

**Post-Divorce Division of Property**

In her first and second issues, Cindy contends that the trial court erred in failing to divide (1) the alleged community interest in Con-Dive or the proceeds from Davis's disposition of his ownership interest and (2) the alleged outstanding Stolt stock options or the proceeds from Davis's exercise of these options. Cindy contends that the trial court's findings that Davis did not have an ownership interest in Con-Dive and that Davis did not have outstanding Stolt stock options that remained undivided in the final divorce decree are not supported by legally sufficient evidence.

9

### A.    *Standard of Review*

Texas Family Code section 9.201 provides that, after a divorce proceeding, "[e]ither former spouse may file a suit . . . to divide property not divided or awarded to a spouse in a final decree of divorce or annulment." TEX. FAM. CODE ANN. § 9.201(a) (Vernon 2006); *Brown v. Brown*, 236 S.W.3d 343, 347 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "If a court of this state failed to dispose of property subject to division in a final decree of divorce . . . the court shall divide the property in a manner that the court deems just and right, having due regard for the rights of each party . . . ." TEX. FAM. CODE ANN. § 9.203(a) (Vernon 2006). Here, Cindy, as the post-divorce petitioner, bears the burden to prove that the trial court did not consider or dispose of Davis's alleged ownership interest in Con-Dive and Davis's alleged outstanding Stolt stock options in the final divorce decree. *See Brown*, 236 S.W.3d at 349 ("[A]s the petitioner in this statutory post-divorce action, George has the burden to prove that the divorce court did not consider or dispose of the 401(k) plan or the accrued bonuses in the final decree."); *Stephens v. Marlowe*, 20 S.W.3d 250, 254 (Tex. App.—Texarkana 2000, no pet.) ("Marlowe, as the party requesting partition, had the burden to prove in the partition action that the divorce court did not consider or dispose of the settlement proceeds.").

In a bench trial, findings of fact carry the same weight as a jury's verdict. *OAIC Commercial Assets L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 736 (Tex. App.—Dallas 2007, pet. denied). When a party attacks the legal sufficiency of an adverse finding on an issue on which she had the burden of proof at trial, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)); *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 781 (Tex. App.—Houston [1st Dist.] 2011, no pet.). In reviewing a "matter of law" challenge, we must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Francis*, 46 S.W.3d at 241; *see also Brown*, 236 S.W.3d at 348 ("In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding if a reasonable fact finder could consider it, and disregard evidence contrary to the finding unless a reasonable fact finder could not disregard it.") (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). If there is no evidence supporting the finding, we will then examine the entire record to determine if the contrary position is established as a matter of law. *Francis*, 46 S.W.3d at 241. We will sustain this challenge only if the contrary

11

proposition is conclusively established. *Id.* (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)).

The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded fact finder to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827. The fact finder is the sole judge of witness credibility and the weight to give their testimony. *See id.* at 819. "Consequently, we may not replace a finding simply because we would reach a different answer on the evidence." *Brown*, 236 S.W.3d at 348 (citing *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998)).

### B.    *Alleged Ownership Interest in Con-Dive*

In Finding of Fact One, the trial court found "that the evidence does not support a finding that [Davis], held an ownership interest in Con-Dive, L.L.C., that remained undivided from the original judgment of divorce rendered on July 27, 2006."

At trial, Davis repeatedly testified that he never had an ownership interest in Con-Dive. Davis stated that he was given the opportunity to invest in Con-Dive and become a member, but he never did so because he could not pay the $25,000 initial capital contribution. Con-Dive's Operating Agreement, which originally stated that Davis had paid his capital contribution and listed Davis as a member, was later amended to remove both Davis and Lorio as members explicitly because

12

neither of them actually paid their capital contributions. Davis also testified that, although he later received $550,000 from Con-Dive, this payment was a bonus for the services that he had performed for Con-Dive and it was not a payment for cashing out an ownership interest in the company. Wesley Freeman, a managing director and former CEO of Con-Dive, corroborated all of Davis's testimony concerning an alleged ownership interest in Con-Dive in his deposition.

Viewing the evidence in the light most favorable to the finding under review, as we must in a legal sufficiency review, we conclude that a reasonable and fair-minded fact finder could have credited Davis's and Freeman's testimony that Davis never held an ownership interest in Con-Dive. *See Francis*, 46 S.W.3d at 241; *Brown*, 236 S.W.3d at 348; *see also City of Keller*, 168 S.W.3d at 827 (providing standard for legal sufficiency review). We therefore hold that the trial court's finding that Davis never had an ownership interest in Con-Dive was supported by legally sufficient evidence.

In her first issue, Cindy states that she "specifically challenges findings of fact 1 and 4." In Finding of Fact Four, the trial court found "that the evidence does not support a finding that [Davis] concealed cash assets of the community prior to the divorce and that remained undivided from the original judgment of divorce rendered on July 27, 2006." Cindy provides no indication of which cash asset she refers to when she "specifically challenges" Finding Four, and she provides no

13

argument specifically addressing this finding.  Thus, to the extent that she challenges this fact finding, she has waived this issue due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i).

Cindy also argues that "[a]lthough the court did not make a specific finding as to fraudulent concealment and unjust enrichment, no recovery was granted on these theories.  The trial court's denial of relief on these issues is also challenged here for all the same reasons."  Texas Rule of Civil Procedure 299 governs omitted findings of fact and conclusions of law and provides,

> When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein.  The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact . . . .

TEX. R. CIV. P. 299.  When none of the findings address a ground of recovery or a defense and the appellant does not file a request for additional or amended findings of fact, the appellant waives her ground of recovery or defense.  *See Pinnacle Homes, Inc. v. R.C.L. Offshore Eng'g Co.*, 640 S.W.2d 629, 630 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *see also Stanley Works v. Wichita Falls Indep. Sch. Dist.*, 366 S.W.3d 816, 824 (Tex. App.—El Paso 2012, pet. filed) ("A party asserting an affirmative defense in a trial before the court must request findings in support of the defense to avoid waiver.  If the trial court's findings do not include any of the elements of the defense asserted, the party must specifically

request additional findings relevant to the defense.") (internal citations omitted). Here, the trial court made no findings or conclusions concerning Cindy's claim of unjust enrichment, but she did not request additional findings or conclusions on this claim. Thus, we conclude that she has waived her claim for unjust enrichment.

We overrule Cindy's first issue.

### C.    *Alleged Outstanding Stolt Stock Options*

In Finding of Fact Two, the trial court found "that the evidence does not support a finding that [Davis] concealed the proceeds of the sale of stock options received from Stolt Offshore, Inc., that remained undivided from the original judgment of divorce rendered on July 27, 2006."

Both Cindy and Davis testified that, as part of his compensation, Davis received stock options from Stolt. Davis testified that he exercised Stolt stock options throughout 2005 and early 2006 and then sold the stock that he received from exercising the options. Davis acknowledged that, during the pendency of the divorce, the trial court entered an agreed temporary order requiring him to pay Cindy 50% of the net proceeds from the sale of all Stolt stock options and prohibiting him from exercising any further Stolt stock options without Cindy's express written consent. Davis testified that, pursuant to this order, he paid Cindy 50% of the proceeds from his exercise of the stock options. Davis also testified that he left Stolt around September 2005 and that he believed that he had to

exercise all of his stock options before he ended his employment or else the options would be lost. He further stated that the only outstanding shares of Stolt that he possessed were part of his Stolt 401(k) plan, which the trial court divided equally between him and Cindy in the final divorce decree. He unequivocally testified that he never concealed any Stolt stock options or proceeds from Stolt stock options from Cindy and that he did not own any unexercised Stolt stock options on the date of the final divorce decree.

Again, viewing the evidence in the light most favorable to the finding under review, as we must, we conclude that Davis's testimony is some evidence that he did not possess any unexercised Stolt stock options or undivided proceeds from the exercise of Stolt stock options on the date of the final divorce decree. *See Francis*, 46 S.W.3d at 241; *Brown*, 236 S.W.3d at 348; *see also City of Keller*, 168 S.W.3d at 827 (providing standard for legal sufficiency review). We therefore hold that the trial court's finding that Davis did not conceal proceeds from the sale of Stolt stock options that remained undivided on the date of the final divorce decree was supported by legally sufficient evidence.

We overrule Cindy's second issue.

## Conclusion

We affirm the judgment of the trial court.

        Evelyn V. Keyes
        Justice

Panel consists of Justices Keyes, Massengale, and Brown.